**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and
STATE FARM FIRE & CASUALTY
COMPANY,

                          Plaintiffs,         **REPORT AND RECOMMENDATION**

      -against-                             **17-CV-6519 (LDH) (ST)**

ELECTROPHYSIOLOGIC MEDICAL
DIAGNOSTICS, P.C.,
DINA S. NELSON, M.D.,
LIYE LI, M.D.,
JEAN BAPTISTE SIMEON, M.D.,
YUQING ZHANG, M.D.,
NABIL ELHADIDY, M.D., and
ELIZABETH CHANDLER, M.D.,

                          Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

       On November 8, 2017, State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company ("Plaintiffs") brought this action against Defendants Electrophysiologic Medical Diagnostics, P.C. ("Electro"), Dina S. Nelson, M.D., Liye Li, M.D., Jean Baptiste Simeon, M.D., Yuqing Zhang, M.D., Nabil Elhadidy, M.D., and Elizabeth Chandler, M.D., seeking to recover fraudulently obtained insurance claim payments issued by Plaintiffs. Dkt. No. 1 ("Compl.") ¶ 1. Plaintiffs reached a settlement with and dismissed all claims against Defendants Electro, Elizabeth Chandler, M.D., Liye Li, M.D., Yuqing Zhang, M.D. And Dina S. Nelson, M.D. Dkt. No. 67 (Stipulation of Dismissal); Dkt. No. 64 (Minute Entry from Settlement Conference).

Defendants Nabil Elhadidy and Jean Baptiste Simeon ("Defaulting Defendants") failed to appear, answer, or otherwise timely respond to the Complaint, despite proper service. *See* Dkt. Nos. 29, 30 (Affidavits for Certificates of Default); *see also* Dkt. Nos. 13, 15 (Executed Affidavits of Service). Plaintiffs filed requests for entry of default with the Clerk of the Court on January 17, 2018. Dkt. Nos. 29, 30. Default was entered on January 18, 2018. Dkt. Nos. 31, 32. Plaintiffs have now moved for default judgment (Dkt. Nos. 70), and the Honorable LaShann DeArcy Hall has referred the motion to me for a report and recommendation. Order dated October 2, 2018.

In their motion for default judgement, Plaintiffs seek recovery of $420,000 in damages from Defaulting Defendants for common law fraud, unjust enrichment, and aiding and abetting fraud. Dkt. No. 70-1 ("Default J. Mem."). For the reasons discussed below, I recommend granting Plaintiffs' motion for default judgment as to liability for common law fraud, dismissing the unjust enrichment and aiding and abetting fraud claims as duplicative, and deferring ruling on damages until Plaintiffs have properly apportioned the request.

## BACKGROUND[1]

Plaintiffs allege that Electro, its owner, Dina S. Nelson, as well as Elhadidy, Simeon, and the other doctors who rendered services on behalf of Electro (the "Rendering Providers") defrauded Plaintiffs by preparing and/or submitting bills and supporting documentation for medically unnecessary neurological examinations and electrodiagnostic tests ("EDX Tests") performed on individuals who were involved in automobile accidents. Compl. ¶¶ 1, 15, 17, 65-

---

[1] On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (affirming liability of defaulting defendant based upon "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs").

83. The individuals had No-Fault insurance benefits under automobile insurance policies issued by Plaintiffs. *Id.* ¶¶ 1, 20-22. In order to obtain access to high volumes of automobile accident patients, Electro entered into kickback arrangements disguised as lease payments with doctors ("Referring Providers") at numerous multidisciplinary clinics throughout New York. *Id.* ¶¶ 1-3, 31-32. The Rendering Providers performed neurological examinations on patients who were referred to Electro by these Referring Providers. The Rendering Providers, including Defaulting Defendants, purported to conduct legitimate examinations of patients to determine the nature and extent of their neurological complaints and conditions. *Id.* ¶ 4. Plaintiffs allege that the Rendering Providers failed to legitimately examine patients to determine the true nature and extent of their injuries, reported similar, and in some instances, nearly identical complaints and examination findings, and diagnosed virtually every patient with conditions of the cervical and lumbar regions of the spine in order to justify a recommendation for EDX Tests in both arms and both legs. *Id.* The Rendering Providers then purported to perform EDX Tests on the patients. The EDX Tests were not tailored to the individual needs of any patient, tested an excessive number of nerves and limbs, yielded results that were not credible, and at least in some instances, were billed when the tests were not even performed. *Id.* ¶ 5. As a result of the scheme, Plaintiffs incurred damages of $420,000 in fraudulent insurance payouts. *Id.* ¶ 7.

## DISCUSSION

### I.     Default Judgment Standard

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a

default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

Once a defendant is found to be in default, he is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, a court retains the discretion to determine whether a final default judgment is appropriate. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Taylor v. 312 Grand St. LLC*, 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right.") (internal quotation marks and citations omitted). Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (internal quotation marks and citations omitted), *adopted by* 688 F. Supp. 2d 150, 151 (E.D.N.Y. 2010).

Unlike allegations pertaining to liability, allegations relating to damages are not deemed admitted upon entry of a default. *Cf. supra* note 1. After establishing liability, the court considers whether the plaintiff "has met the burden of proving damages to the court with 'reasonable certainty.'" *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, 15-CV-6505 (NGG) (PK), 2016

WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999)). Although a court may conduct an evidentiary hearing to determine damages, "it is not necessary…, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). A court may base its determination of the amount of damages "upon a review of detailed affidavits and documentary evidence." *J & J Sports Prods., Inc. v. Emily Bar Rest. Inc.,* 15-CV-6499 (RJD), 2016 WL 6495366, at *2 (E.D.N.Y. Sept. 27, 2016), *adopted by* 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016); *see Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) ("In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient.").

## II.     Common Law Fraud

Plaintiffs allege that Defaulting Defendants are liable for committing common law fraud under New York law.  Compl. ¶¶ 89-94.  "In order to plead a claim for New York common law fraud, a plaintiff must allege that the defendant [1] made a material misrepresentation of a fact, [2] with knowledge of its falsity and an intent to induce reliance, [3] that the plaintiff justifiably relied on defendant's misrepresentation, and [4] that the plaintiff suffered damages." *Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *4 (E.D.N.Y. Feb. 8, 2013) (quoting *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 374 (E.D.N.Y. 2012)), *adopted by* 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).  Under the Federal Rules of Civil Procedure ("FRCP"), "[i]n alleging fraud . . ., a party must state with particularity

the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).  To comply with this requirement, the Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Gov't Employees Ins. Co. v. Badia*, No. 13-CV-1720 (CBA) (VMS), 2015 WL 1258218, at *14 (E.D.N.Y. Mar. 18, 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

Plaintiffs allege that Defaulting Defendants made two types of material misrepresentations in preparing the no-fault claims with Electro: that the neurological examinations they performed were legitimately conducted and that the recommended EDX Tests were medically necessary.  Compl. ¶¶ 15, 17, 65.  In fact, the neurological examinations were not credible as they diagnosed "virtually every patient [with] neck and low back pain," while "hardly any of the patients complained for mid-back pain." *Id.* ¶ 67.  Plaintiffs explain that it is "virtually impossible that nearly every patient would have such conditions" and these examinations were simply a ruse to "justify EDX Tests on both the upper *and* lower limbs." *Id.*  Furthermore, the tests performed by Defaulting Defendants were excessive and medically unnecessary as they were "not individually tailor[ed] . . . to any patient's unique circumstances and needs." *Id.* ¶ 72.  Moreover, the tests consistently exceeded the recommended policy of the American Association of Neuromuscular & Electrodiagnostic Medicine ("Recommended Policy"). *Id.* ¶ 73, 76.  In addition, Plaintiffs provide evidence that at least some of the tests were not actually performed, though billed to Plaintiffs. *Id.* ¶ 82.  Courts have found similar material misrepresentations to be sufficient in satisfying the first and fourth elements for common law fraud.  *See, e.g.*, *Badia*, 2015 WL 1258218, at *14 (finding fraud allegations sufficient where defendants made "misrepresent[ations to plaintiff insurance company] that the initial

- 6 -

consultations underlying the claims were medically necessary" and "that the electrodiagnostic tests underlying the claims were medically necessary and provided according to AANEM recommendations"); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 375 (E.D.N.Y. 2012) (common law fraud sufficiently "pled with the requisite specificity" where "defendants . . . misrepresent[ed] in their no-fault claims . . . that they were requesting reimbursement for services that were medically necessary and compensable"); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 237 (E.D.N.Y. 2008) (finding fraud claim sufficiently pled where the allegations included "billing [insurance company] for tests that are not medically necessary and . . . [following] the same procedures . . . for all patients without regard for their individual circumstances"). Thus, the Complaint specifies the statements Plaintiffs contend are fraudulent and explains with particularity why these statements are fraudulent. *See Badia*, 2015 WL 1258218, at *15.

The Complaint also identifies the speaker of these fraudulent statements (*i.e.*, the no-fault claims for reimbursement), as well as when and where the statements were made. Exhibits 1 and 2 attached to the Complaint and Exhibit A attached to the Default Judgement Motion identify Defaulting Defendants as the speakers of some of the fraudulent claims submitted by Electro to Plaintiffs. *See* Dkt. Nos. 1-4, 1-5, 70-6 (collectively, "Claim Spreadsheets"). The exhibits also list the claim submission dates, claim numbers, and claim-demand amounts. *Id*. Courts have found similar charts to satisfy these pleading requirements. *See, e.g.*, *Badia,* 2015 WL 1258218, at *15; *Lyons*, 843 F. Supp. 2d at 372-73.

The Complaint sufficiently alleges that Defaulting Defendants intended to defraud Electro. "In proving fraudulent intent, 'malice, intent, knowledge, and other condition of mind of a person may be averred generally . . . [b]ut . . . plaintiffs must allege facts that give rise to a

- 7 -

strong inference of fraudulent intent.'" *IAV Med. Supply*, 2013 WL 764735, at *5 (alterations in original) (quoting *Lerner*, 459 F.3d at 290). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Lerner*, 459 F.3d at 290-91). Plaintiffs have shown that Defaulting Defendants had both opportunity and motive to commit fraud. Defaulting Defendants had motive because they financially benefitted from filing fraudulent insurance claims. Compl. ¶ 7; *see IAV Med. Supply*, 2013 WL 764735, at *5 ("Motive can be proved when a showing is made that concrete benefits could be realized by one or more of the misrepresentations or omissions alleged . . . ."); *Badia,* 2015 WL 1258218, at *15 ("Plaintiffs allege that Baneur had motive to commit fraud, *i.e.,* to gain a financial benefit of tens of thousands of dollars . . . ."). They had opportunity because they were able to misrepresent to Plaintiffs that the services provided were medically necessary and thus eligible for No-Fault insurance coverage. Compl. ¶¶ 1, 15, 17, 65-83; *see IAV Med. Supply*, 2013 WL 764735, at *5 ("[T]he means and likely prospect of achieving concrete benefits by such means will constitute opportunity."); *see also id.* at *1 ("As an insurer that issues automobile insurance policies, [Plaintiff] is required to issue up to $50,000 per insured for necessary health care goods and services to their insureds that are injured in motor vehicle accidents."); *Badia,* 2015 WL 1258218, at *15 ("Plaintiffs allege that Baneur had . . . opportunity to commit fraud, *i.e .,* the misrepresenting to Plaintiffs of the extent of services provided, that the services were medically necessary, and that the services were provided by Baneur's employees."). By alleging that Defaulting Defendants prepared fraudulent insurance claims based on medically unnecessary and improperly administered procedures, Plaintiffs have also provided strong circumstantial evidence

of conscious misbehavior.  Compl. ¶¶ 15, 17, 65; *see, e.g., Gov't Employees Ins. Co. v. Infinity Health Prod., Ltd.*, No. 10-CV-5611 (JG) (JMA), 2012 WL 1427796, at *5 (E.D.N.Y. Apr. 6, 2012) ("Plaintiffs allege that retail defendants not only knew that they were submitting fraudulent claims to GEICO, but that they did so intentionally in a scheme for profit."), *adopted by* 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).

Plaintiffs sufficiently allege that they reasonably relied on the fraudulent misrepresentations in the submitted claims.  "[I]nsurance companies are . . . permitted to rely on 'facially valid' insurance claim forms submitted for reimbursement."  *IAV Med. Supply,* 2013 WL 764735, at *5; *see also Badia,* 2015 WL 1258218, at *16 ("It is similarly incorrect to claim that [the no-fault insurer] was remiss in relying on [the] defendants' facially reasonable diagnoses and claims for payment and failing to uncover their falsity." (alterations in original)). Moreover, reliance was reasonable in view of the steps Defendants took to conceal the fraud. *See, e.g*., Compl. ¶ 67 (Improperly conducting neurological examinations to justify excessive EDX Testing); *id.* ¶¶ 1-3, 31-32 (Electro entering into kickback arrangements disguised as lease payments with Referring Providers); *see also IAV Med. Supply,* 2013 WL 764735, at *5 ("It was reasonable for GEICO to rely on these submissions given the great lengths taken by the Retail Defendants to conceal the fraud.").

Finally, Plaintiffs suffered damages as a result of the misrepresentations.  As shown in the submitted documentation, Plaintiffs reimbursed Electro on the submitted claims in the amount of $420,000.  Compl. ¶ 7; Claim Spreadsheets; *see Badia*, 2015 WL 1258218, at *16 ("Plaintiffs have shown that they have reimbursed Baneur on the submitted claims in the amount of $117,210.85, showing that Plaintiffs suffered damages."); *IAV Med. Supply,* 2013 WL 764735, at *5 ("Finally, Plaintiffs sufficiently allege that the Retail Defendants' fraudulent

actions have caused GEICO to suffer damages in an amount exceeding $497,000.00, as detailed in the complaint and accompanying payment charts.").

In light of the foregoing, I recommend granting Plaintiffs' default judgment motion as to Defaulting Defendants' liability for New York common law fraud.

### III. Other Claims

Plaintiffs also allege that Defaulting Defendants are liable for unjust enrichment and aiding and abetting fraud under New York law. Compl. ¶¶ 95-104; Default J. Mem. at 6-8. These claims are based on the same conduct as the common law fraud claim, however, and seek the same compensation. *See* Default J. Mem. at 6-8. "Under New York law, courts will dismiss claims that are entirely duplicative when they are premised on the same conduct and seek the same relief." *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 553 (E.D.N.Y. 2015). Accordingly, I recommend dismissing these claims as duplicative of the common law fraud claim. *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *cf. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-CV-3723 (RJS), 2016 WL 5719749, at *6 (S.D.N.Y. Sept. 29, 2016) (retaining aiding and abetting fraud claim where "notwithstanding the overlap between the fraud and aiding and abetting claims, Plaintiffs also allege acts of substantial assistance that are distinct from the alleged misrepresentations and omissions that are actionable under Plaintiffs' claim for fraud.").

### IV. Damages

As evidence of damages, Plaintiffs present Exhibit A attached to the Default Judgement Motion, listing the claim payment dates, claim numbers, and claim-demand amounts. Dkt. No.

70-6 at ECF 5-9.[2]  Michael Knox, a Team Manager in the Multi-Claim Investigative Unit of State Farm Mutual Automobile Insurance Company, oversaw the preparation of this summary chart based on Plaintiffs' records.  Dkt. No. 70-6 at ECF 2-3, ¶¶ 1, 2, 5.  Courts have found documentation similar to that which has been submitted by Plaintiffs to adequately support a damages award without the necessity of a hearing.  *See, e.g.*, *Allstate Ins. Co. v. Yehudian*, No. 14-CV-4826 (JS) (AKT), 2018 WL 1767873, at *16 (E.D.N.Y. Feb. 15, 2018) (collecting cases), *adopted by* 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018); *see also IAV Med. Supply,* 2013 WL 764735, at *8 (finding sufficient basis for damages where "[i]n her declarations, Fogarty submitted tax identification payment runs ('TIN runs') setting forth the amount of payments made by GEICO to the Retail Defendants in each of the three schemes"); *Badia*, 2015 WL 1258218, at *23 (finding sufficient basis for damages where "[t]he principal evidence relating to damages on Plaintiffs' claims was the TIN Run, the accuracy of which was confirmed by Ms. Fogarty's and Mr. Korkidis's sworn declarations.").

      The attached claim chart lists all claims submitted by Electro to Plaintiffs, however, including those signed by providers other than Defaulting Defendants.  *Compare* Dkt. Nos 1-4, 1-5 (listing provider for each claim number) *with* Dkt. No. 70-6 at ECF 5-9 (omitting provider information but listing claim numbers for claims submitted by providers other than Defaulting Defendants).  Plaintiffs justify this by stating that "[b]ased on this fraudulent conduct, Plaintiffs . . . seek[] damages of more than $420,000 against Defendants, including Elhadidy and Simeon, who are jointly and severally liable with the other Defendants . . . ."  Default J. Mem. at 2.  Plaintiffs do not justify why the Defaulting Defendants are jointly and severally liable with all other Defendants for claims they did not participate in preparing.  Joint and several liability is

---

[2] Pages correspond to ECF numbering and not document pagination.

appropriate when multiple "tort-feasors act concurrently or in concert to produce a single injury." *Ravo by Ravo v. Rogatnick*, 70 N.Y.2d 305, 309, 514 N.E.2d 1104 (1987). Plaintiffs cite to cases that treat co-conspirators as jointly and severally liable for a fraudulent scheme yet do not sufficiently plead a conspiracy claim. Default J. Mem. at 8-9; *see Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 332 (Bankr. S.D.N.Y. 1999) ("Since New York courts do not recognize an independent cause of action for civil conspiracy, the [conspiracy] Claim can lie only if it alleges, in addition to the conspiracy, independent overt acts undertaken in pursuit of that conspiracy."). Thus, "[s]ince plaintiffs are only entitled to collect once on *each* fraudulent claim, each defendant who participated in the submission of *a* fraudulent claim is jointly and severally liable for the amount of *that* claim with the other defendants who participated in submitting it." *Chubb & Son Inc. v. Kelleher*, No. 92-CV-4484 (CBA) (RML), 2006 WL 1789118, at *5 (E.D.N.Y. Mar. 28, 2006) (emphasis added). Accordingly, I recommend that Plaintiffs be instructed to prepare separate charts of damages for each Defaulting Defendant based on the fraudulent claims that defendant participated in preparing.

Plaintiffs also request that Defaulting Defendants be denied "the benefits of set-off for settlement payments" made by the other defendants. Default J. Mem. at 10. "Most courts in the Second Circuit . . . have held that a defendant in default 'may not invoke the benefits of the set-off rule.'" *Sole v. Knoedler Gallery, LLC*, No. 12-CV-2313 (PGG) (HBP), 2016 WL 5417880, at *10 (S.D.N.Y. July 21, 2016) (quoting *Gov't Employees Ins. Co. v. Simakovsky*, 14-CV-3775 (KAM) (SMG), 2015 WL 5821407, at *13 (E.D.N.Y. Oct. 5, 2015)) (collecting cases), *adopted by* 2016 WL 5468298 (S.D.N.Y. Sept. 28, 2016). Granting a set off would "reward[] a defaulting defendant for its refusal to participate in the process of litigation." *Godfrey v. Soto*, No. 06-CV-428 (NG) (JO), 2007 WL 2693652, at *7 (E.D.N.Y. Sept. 10, 2007). "Where the

non-settling defendants have defaulted, however, the windfall rightfully belongs to plaintiffs." *Sniadach v. Gonzales*, 191 Misc. 2d 422, 425, 743 N.Y.S.2d 221, 223 (Civ. Ct. 2001). Consequently, I do not recommend reducing the properly apportioned damages amounts by an offset.

## CONCLUSION

For the foregoing reasons, I recommend granting Plaintiffs' motion for default judgment as to liability for common law fraud, dismissing the unjust enrichment and aiding and abetting fraud claims as duplicative, and deferring ruling on damages until Plaintiffs have properly apportioned the request for each Defaulting Defendant.

Counsel for Plaintiffs is directed to serve this Report and Recommendation on Defaulting Defendants at their respective last known addresses and to file proof thereof with the Court within five (5) business days.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985). Responses to any objections shall be due fourteen days from service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

 /s/ Steven L. Tiscione
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
      March 29, 2019